**WEINTRAUB & SELTH, APC**
**Daniel J. Weintraub - Bar #132111**
**James R. Selth – Bar #123420**
**Elaine V. Nguyen- Bar #256432**
**11766 Wilshire Blvd., Suite 1170**
**Los Angeles, CA 90025**
**Telephone: (310) 207-1494**
**Facsimile:   (310) 442-0660**
**Email:        elaine@wsrlaw.net**

Attorneys for Plaintiff, ENIKO FIGUEROA

FILED
CLERK U.S. DISTRICT COURT

AUG - 9 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CV12-06850** ℞-(SHx)

| | |
|---|---|
| ENIKO FIGUEROA, an individual, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | 1. **NEGLIGENCE** |
| GMAC MORTGAGE USA CORPORATION; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RALI 2007QS9; EXECUTIVE TRUSTEE SERVICES D/B/A ETS SERVICES, LLC; and Does 1 – 10, inclusive, | 2. **VIOLATION OF 15 U.S.C. § 1641(g)** |
| | 3. **VIOLATION OF 12 U.S.C. § 2605** |
| | 4. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.** |
| | 5. **BREACH OF CONTRACT** |
| | 6. **ACCOUNTING** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

COPY

## COMPLAINT

COMES NOW Plaintiff Eniko Figueroa ("Plaintiff" or "Mrs. Figueroa"), by and through her counsel, for her Complaint against Defendants GMAC Mortgage USA Corporation (in its capacity as purported mortgage servicer) (hereinafter "**GMAC**" ); Deutsche Bank Trust Company Americas, as Trustee for RALI 2007QS9 (in its capacity as trustee for the purported assignee of Plaintiff's Note and Deed of Trust) (hereinafter "**Deutsche Bank**"), and Executive Trustee Services d/b/a ETS Services, LLC (hereinafter "**ETS Services**") (collectively "Defendants"), pleads as follows:

## I.   STATEMENT OF THE CASE

1.     On or around March 20, 2007, Mrs. Figueroa executed a promissory note ("Note") in favor of American Mortgage Network secured by a deed of trust ("Deed of Trust" or "Mortgage") (the Note and Deed of Trust shall collectively be referred to as "Loan") for the finance of real property located at 26824 Kendall Avenue, Stevenson Ranch, CA 91381 ("Subject Property"). In or around August 2008, Plaintiff and GMAC entered into a loan modification ("Loan Modification") of Mrs. Figueroa's Loan. Mrs. Figueroa made regular mortgage payments and trial payments pursuant to the Loan Modification. However, after making mortgage payments, the principal balance of Mrs. Figueroa's Loan increased from $758,000.00 to $818,000.00. In November 2010, Mrs. Figueroa once again contacted GMAC to obtain information regarding why her Loan balance had *increased*. GMAC requested that Mrs. Figueroa resubmit her loan modification application. Mrs. Figueroa diligently resubmitted her loan modification documents several times, only to be repeatedly advised that her documents were lost, misplaced, or "sent to the wrong division." On or about October 17, 2011, Mrs. Figueroa sent a Qualified Written Request ("QWR") under the Real Estate Settlement Procedures Act to GMAC to obtain information about the servicing of her Loan. To date, Mrs. Figueroa has not received a response from GMAC addressing her concerns. GMAC's failure to provide a response is a violation of 12 U.S.C. § 2605. Further, Mrs. Figueroa's Loan was allegedly assigned to Deutsche Bank on or around April 9, 2012.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1   However, Deutsche Bank failed to send Mrs. Figueroa a Notice of New Creditor, in

2   violation of 15 U.S.C. § 1641(g).

## II.   JURISDICTION, VENUE AND PARTIES

4        2.      This Court has original jurisdiction over the claims in this action based on

5   28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983 which confer original

6   jurisdiction on federal district courts in suits to address the deprivation of rights secured

7   by federal law.  This Court also has supplemental jurisdiction over the pendant state law

8   claims because they form a part of the same case or controversy under Article III of the

9   United States Constitution, pursuant to 28 U.S.C. § 1367.

10       3.      This action arises under 12 U.S.C. § 2605, 15 U.S.C. § 1641(g), and under

11   California statutory and common law.  Plaintiff brings this action against Defendants for

12   damages and harm resulting from the Defendants' violations of federal law and

13   negligent and unlawful conduct involving the servicing of her Loan.

14       4.      The unlawful conduct, illegal practices, and acts complained of and alleged

15   in this Complaint were all committed in the Central District of California and the

16   involved real property located in the Central District of California.  Therefore, venue

17   properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

18       5.      Plaintiff is now, and at all times mentioned herein, an individual residing in

19   the County of Los Angeles.  At all times relevant to this action, Plaintiff has owned real

20   property commonly known as 26824 Kendall Lane, Stevenson Ranch, California 91381.

21   Further described as Assessor's Parcel Number 2826-104-015, with the legal description

22   attached hereto as **Exhibit "A"**, Legal Description of Property.

23       6.      At all relevant times, GMAC Mortgage USA Corporation ("**GMAC**") is a

24   Delaware corporation organized under the laws of the United States with its main office

25   in Fort Washington, Pennsylvania.  On or about May 14, 2012, Defendant GMAC filed

26   for Chapter 11 bankruptcy protection in the Southern District of New York to commence

27   Case No. 12-1202 (MG) (the "GMAC Bankruptcy Case").  Pursuant to a certain order

28   dated July 13, 2012, reflected on the Docket as No.774, the automatic stay imposed by

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

section 362 (a) of the Bankruptcy Code is modified with respect to direct claims and counter-claims relating exclusively to loans that are serviced by GMAC for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a judicial or non-judicial state. As such, Plaintiff may commence this action against GMAC without first seeking relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code because Plaintiff's claims are within the realm of the Bankruptcy Court's July 13, 2012 order.

7. At all relevant times, Deutsche Bank Trust Company Americas, as Trustee for RALI 2007QS9 ("**Deutsche Bank**"), is a New York corporation with its main office in New York City, New York.

8. At all relevant times, Executive Trustee Services, LLC d/b/a ETS Services, LLC is a Delaware limited liability company with its main office in Burbank, California.

9. Plaintiff is ignorant of the true identity and capacity of defendants designated as Does 1-10, but will amend the Complaint when their identities have been ascertained according to proof at the time of trial. Plaintiff alleges on information and belief, however, that each and every Doe Defendant is in some manner responsible for the acts, and conduct of the other defendants, and were, and are responsible for the injuries, damages, and harm, incurred by Plaintiff. Plaintiff further alleges on information and belief that each such designated defendant acted, and acts, as the authorized agent, representative, and associate of the other defendants in doing the things alleged herein.

10. Whenever reference is made in this Complaint to any act of any defendant(s), that allegation shall mean that each defendant acted individually and jointly with the other defendants.

11. At all relevant times, GMAC was purporting to act as a servicing agent. As a purported servicing agent, GMAC's authority to negotiate the terms of Plaintiff s Note is only as valid and enforceable as its principals' interest. Accordingly, GMAC's rights to collect payments and/or enter into subsequent agreements with Mrs. Figueroa are

1  contingent upon having a valid, legal, enforceable interest in Plaintiff's Note or Deed of

2  Trust.  Thus, to the extent that the transfer of Plaintiff s Note is void, GMAC acted

3  without proper legal authority.

4       12.   At all relevant times, ETS Services was purporting to act as foreclosure

5  trustee.  However, Plaintiff alleges that Deutsche Bank nor its agents has or have

6  executed and recorded a duly executed Substitution of Trustee as required by Cal. Civ.

7  Code Section 2934, et seq.  Consequently, any trustee's sale of Plaintiff's Property that

8  may take place shall be void as a matter of law.  Likewise, any purported Trustee's Deed

9  Upon Sale will be void.  See, *Dimock v. Emerald Properties*, 81 Cal. App. 4th 868, 874

10  (2000).

11       13.   Any allegation about acts of any corporate or other business defendant

12  means that the corporation or other business did the acts alleged through its officers,

13  directors, employees, agents and/or representatives while they were acting within the

14  actual or ostensible scope of his authority.

15       14.   At all relevant times, each defendant committed the acts, caused or directed

16  others to commit the acts, or permitted others to commit the acts alleged in this

17  Complaint.  Additionally, some or all of the defendants acted as the agent of the other

18  defendants, and all of the defendants acted within the scope of their agency if acting as

19  an agent of the other.

20       15.   At all relevant times, each defendant knew or realized that the others

21  defendants were engaging in or planned to engage in the violations of law alleged in this

22  Complaint.  Knowing or realizing that the other defendants were engaging in or

23  planning to engage in unlawful conduct, each defendant nevertheless facilitated the

24  commission of those unlawful acts.  Each defendant intended to and did encourage,

25  facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted

26  the other defendants in the unlawful conduct.

27       16.   Plaintiff's information and belief is based on: (1) a title report and analysis

28  of the Property's county records; (2) direct written and oral communication with

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

Defendants; (3) her counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available securitization documents & practices; (4) the purported "Assignment"; and (5) an audit of the title to the Subject Property.

## III.   FACTUAL ALLEGATIONS

17.   On or around March 20, 2007, Mrs. Figueroa executed a promissory note (the "Note") in the principal sum of $768,000.00, payable to American Mortgage Network, Inc. ("American Mortgage") as lender.

18.   At all times relevant to this action defendant GMAC, acted as the loan servicer with respect to the Note and First Deed of Trust.  A true and correct copy of the First Deed of Trust is attached hereto as **Exhibit "B"**.  At all times relevant to this action defendant GMAC, acting through its employees and agents, has purported to act on behalf of Deutsche Bank.

19.   Shortly after the origination of Mrs. Figueroa's Loan, American Mortgage attempted to sell her Loan to other entities.  This attempt to sell Mrs. Figueroa's Loan on the secondary mortgage market is referred to as "Securitization".[1]  Plaintiff alleges that no "true sales" ever took place because the parties failed to follow their *own rules and procedures* for the transfer of Plaintiff's Note and Deed of Trust into the RALI Trust ("RALI Trust")[2], as set forth in the Securitization Agreements.

---

[1] More specifically, under the standard securitization model, the promissory notes were *supposed* to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificateholders").  These **"true sales"** allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against default.  The purpose of securitizing collateral debt obligations was to provide a large supply of money to lenders for originating loans, and to provide investment to bond holders – which were expected to be relatively safe.

[2] The Securitized Trusts, if ever formed properly, are subject to and governed by (1) the Pooling and Servicing Agreement ("PSA") filed with the SEC; (2) the 424B5 Prospectus filed with the SEC and distributed to investors ("Prospectus"); (3) the Mortgage Loan PurGMAC and Sale Agreement ("PurGMAC and Sale Agreement"); (4) the Custodial Agreements ("Custodial Agreement") (collectively, the **"Securitization Agreements"**); (5) the common law trust rules of Delaware or New York, depending on its origin, and (6) Internal Revenue Code § 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.  An essential aspect of the securitization process is that the Securitized Trust **must** obtain good title to the mortgage loans

-6-

20.    From April 2007 to November 2010, Mrs. Figueroa made all of her mortgage payments in a timely manner, based on the representations made by GMAC and their agents that the true lender had the legal and equitable right to collect and demand mortgage payments from her.

21.    Plaintiff alleges that GMAC, by accepting Plaintiff's payments and keeping these payments in "suspense" and/or not applying them to Plaintiff's Loan balance, violated Uniform Covenant 2 of Plaintiff's Deed of Trust and TILA, both of which require lenders to apply payment on the day it is received.  Uniform Covenant 2 of Plaintiff's Deed of Trust states that payments accepted and applied by Lender shall be applied **in the following order of priority**: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [escrow items].  *See* Deed of Trust.

22.    On information and belief, Plaintiff believes that GMAC pocketed the payments that Mrs. Figueroa made from the time GMAC allegedly acquired the servicing rights to the present, and **never** applied the payments according to the priority set forth in Plaintiff's Deed of Trust and applicable laws.  For this reason, Plaintiff disputes the amount of money GMAC claims that she owes on her Loan.

23.    In or around August 2008 Plaintiff initiated loan modification negotiation efforts with GMAC after experiencing unforeseen financial hardship.  At the time, she was led to believe that GMAC was her lender and had the authority to negotiate with her.  The GMAC loan modification, which was supposed to help Mrs. Figueroa, somehow increased her original principal balance from $758,000.00 to $818,000.00.  Mrs. Figueroa was not provided with an accounting or explanation of how her principal balance increased.  Moreover, Mrs. Figueroa was not provided with an explanation of

comprising the pool for that certificate offering.  This is necessary in order for the Trustee of the purportedly Securitized Trust **to be legally or equitably entitled to enforce the mortgage loans in case of default**.  Two documents relating to each mortgage loan **must** be validly transferred to the Securitized Trust as part of the securitization process – the promissory note and the security instrument (deed of trust or mortgage).  In this case, on information and belief, neither document was validly transferred.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1   how her principal balance increased by such a large amount when she had faithfully

2   made payments to GMAC for over a year.  Mrs. Figueroa believes that during this

3   period her regular monthly payments to GMAC and her trial payments pursuant to the

4   loan modification were not credited properly.

5       24.   After repeated negotiations, follow up phone calls, and resubmitting

6   documents many times over, Mrs. Figueroa was did not receive an answer, or a letter of

7   explanation, or a loan modification denial letter from GMAC/EMC despite many follow

8   up calls.

9       25.   Based on this course of conduct, Mrs. Figueroa wished to ensure that her

10  mortgage loan was being property serviced, and that she was not a victim of predatory

11  mortgage servicing.  On or around October 17, 2011, Mrs. Figueroa sent a Qualified

12  Written Request ("QWR") pursuant to Real Estate Settlement Procedures Act

13  ("RESPA"), 12 U.S.C. § 2605(e), in which Plaintiff requested that GMAC provide,

14  among other things, a complete life of the loan transaction, a payoff statement with an

15  explanation of any and all charges and fees, the reinstatement amount, a complete

16  payment history, a breakdown of the amount of claimed arrears and escrow charges,

17  accounting. *See* **Exhibit "C"**, QWR.  A complete accounting should include any late

18  fees/charges, legal fees, property inspection fees, property preservation fees, broker

19  price opinion fees, statutory expense fees, miscellaneous fees, corporate advance fees,

20  trustee suspense accounts, and any other illegal fees or charges she may have been

21  illegally subjected to.  To date, Mrs. Figueroa has not received a proper response to her

22  specific inquiries regarding the servicing of her Loan.

23      26.   Plaintiff further alleges that, on information and belief, if Plaintiff's

24  mortgage payments were actually received by Deutsche Bank, Deutsche Bank did not

25  apply the payments in conformance with the terms of Plaintiff's Note or Deed of Trust,

26  as evidenced by the increase in Plaintiff's Loan balance from $758,000.00 to

27  $818,000.00.

28      27.   Mrs. Figueroa relied on GMAC's misrepresentations and has been

-8-

COMPLAINT

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

damaged in the following ways: (1) Plaintiff has paid the wrong amount for an undetermined amount of time and, on information and belief, has overpaid in interest that was calculated based on illegal fees, charges, and advances; and (2) Mrs. Figueroa has expended significant funds to cover the cost of attorneys' fees and related costs.

28.     Plaintiff further alleges that any amount allegedly owed under the Note is subject to equitable offset by the damages owed to Plaintiff from Defendants Deutsche Bank and GMAC.

29.     As alleged herein, Plaintiff's Note was not properly negotiated, endorsed, and transferred to Deutsche Bank, who seeks to cause its purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

30.     On or about April 9, 2012, MERS allegedly executed a document purporting to be an "Assignment of Deed of Trust" ("**Assignment**"), in which MERS alleged that Deutsche Bank had acquired an interest in Plaintiff's Note and Deed of Trust and that MERS had endorsed, transferred, and negotiated Plaintiff's Note to Deutsche Bank.  A true and correct copy of the Property Profile of the Subject Property evidencing the purported assignment is attached hereto as **Exhibit "D"**, Property Profile.  The Assignment is recorded with the County Recorder of Los Angeles as Document Number 531728.

31.     **Plaintiff specifically disputes the authenticity of the purported Assignment and the allegations contained therein.**  Plaintiff reserves her rights to impugn the corporate and legal authority of the presently unknown signatory of the Assignment.

## IV.   PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY, LEGAL, AND EQUITABLE DAMAGES

32.     The conduct described above by Deutsche Bank and GMAC, was malicious because Defendants knew that they were not properly applying Plaintiff's mortgage payments for over a year from April 2007 to November 2010.  However, despite such

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

knowledge, said Defendants demanded and collected Plaintiff's mortgage payments and denied her for a loan modification.

33.     Deutsche Bank and GMAC engaged and are engaging in a pattern and practice of defrauding Plaintiff, in that, on information and belief, during the entire life of the Loan, Deutsche Bank and GMAC charged illegal fees and charges during the entire life of the Loan, failed to properly credit payments made from April 2007 onwards; incorrectly calculated interest on Plaintiff's account during the entire life of the Loan; and failed to accurately debit fees during the entire life of the Loan. Plaintiff's allegations are based on GMAC's refusal to provide an itemization of all fees, charges, and advances incurred on her Loan account since inception of the Loan. Plaintiff will acquire further information regarding the predatory servicing through discovery.

34.     Plaintiff believes that GMAC pocketed entire payments, or portions thereof, that Mrs. Figueroa during the entire life of the Loan, and **never** applied the payments according to the priority set forth in Plaintiff's Deed of Trust and applicable laws. For this reason, Plaintiff disputes that she owes $858,000.00 on her Loan and that she has alleged arrears of $50,065.37.

35.     Plaintiff further alleges that GMAC failed to properly and accurately deliver Plaintiff's communications, requests for compromise, and Plaintiff's mortgage payments to Plaintiff's true creditor from April 2007 onwards.

36.     On information and belief, at all times material, Deutsche Bank and GMAC had and have actual knowledge that Plaintiff's accounts were not accurate, but that Plaintiff would make further payments based on Defendants' inaccurate accounts. In fact, Plaintiff did make payments to GMAC based on the improper, inaccurate, and fraudulent representations as to Plaintiff's account.

37.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff overpaid in interest.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

38. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff's credit and credit score have been severely damaged by GMAC, as a purported agent of Deutsche Bank.

39. As a direct and proximate result of the actions of Deutsche Bank and GMAC set forth above, Plaintiff does not know how much she actually owes on her Loan.

40. The conduct of Deutsche Bank, GMAC and/or and one or more of the Doe Defendants have led to the loss of Plaintiff's money and imminent loss of Plaintiff's home. The pecuniary damages include, but are not limited to, the of over-calculation and overpayment of interest on her Loan, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, and attorneys' fees, in an amount to be proven at trial, but in excess of $75,000.

41. On information and belief, Mrs. Figueroa has also been damaged in the following ways, among others: (1) defendants have assessed and demanded payment from Mrs. Figueroa for late fees for mortgage payments that were misapplied; (2) Defendants have misapplied mortgage payments, claimed Plaintiff is in default, and then initiated foreclosure proceedings; and (3) defendants have assessed and demanded payment from Mrs. Figueroa for fees associated with the foreclosure proceedings defendants have initiated based on a misrepresented status and amount of default.

42. On April 23, 2012, a purported Notice of Default ("NOD") was recorded by ETS Services. A true and correct copy of the NOD is attached hereto as **Exhibit "E"**. The purported NOD is substantively and fatally defective because the amount declared as being in "default" is incorrect. Plaintiff disputes that she is in default in the amount of $50,065.37 because she continued to make payments pursuant to a trial loan modification of her Loan for over one year. These mortgage payments were not properly applied to her Loan balance.

43. On July 25, 2012, a document purporting to be a "Notice of Trustee's Sale" ("NOTS") was recorded by ETS Services representing to Plaintiff that her Property

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

would be sold at a public auction on August 20, 2012. A true and correct copy of the NOTS is attached hereto as **Exhibit "F"**. The purported NOTS is substantively and fatally defective because it is based on a NOD which states an wholly inaccurate amount as being owed to Deutsche Bank. However, Plaintiff alleges that Deutsche Bank nor its agents has or have executed and recorded a duly executed Substitution of Trustee as required by Cal. Civ. Code Section 2934, et seq. Consequently, any trustee's sale of Plaintiff's Property by ETS Services that may take place shall be void as a matter of law. Likewise, any purported Trustee's Deed Upon Sale recorded by ETS Services will be void. See, *Dimock v. Emerald Properties*, 81 Cal. App. 4th 868, 874 (2000).

44. The conduct of GMAC, Deutsche Bank, and ETS Services was malicious. Said Defendants' conduct was malicious because Defendants did not obtain approval from Deutsche Bank to approve or deny Mrs. Figueroa for a loan modification, yet still represented to Mrs. Figueroa that GMAC had the authority to deny her for a loan modification, even though GMAC did not.

45. Plaintiff was repeatedly denied the opportunity to obtain a proper accounting of her Loan account from inception to the present when GMAC failed to properly respond to Plaintiff's QWR and when GMAC failed to respond to Plaintiff's repeated oral requests to GMAC representatives for additional information.

46. Plaintiff will be incurably prejudiced if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify her true and current creditor/lender and negotiate with them; (2) she will be unable determine if there is a perfected lien against her Property in favor of any Defendant; (3) she will be unable to exercise her right to reimburse any alleged "escrow advances" or "shortages"; (4) she will be denied the right to rebut the allegation that she owes GMAC or Deutsche Bank the amount claimed; (5) she will be denied the opportunity to discover the true amount needed to reinstate her Loan minus any improperly applied mortgage payments, illegal costs, fees, and charges; and (6) she will lose her home to an illegal foreclosure.

47.     Plaintiff and her husband are gainfully employed and have sources of
income, and are ready, willing, and able to unconditionally reinstate her Loan and tender
her obligation.  If required, Plaintiff can provide evidence of her ability to fully reinstate
her Loan and tender her obligation.  Plaintiff is also willing to post a bond if required
during the pendency of this litigation in order to protect the true creditor's interest in the
Subject Property.

## FIRST CAUSE OF ACTION – FOR NEGLIGENCE

### [Against GMAC, Deutsche Bank, ETS Services, and Doe Defendants]

48.     Plaintiff hereby incorporates by reference each and every one of the
preceding paragraphs as if the same were fully set forth herein.

49.     At all times relevant herein, ETS Services was acting as a purported agent
for GMAC and Deutsche Bank.  Defendants are jointly and severally liable for ETS
Services' negligent and reckless conduct.

50.     At all times relevant herein, ETS Services was acting as the trustee under
the DOT.  As explained in detail herein, the "NOD" and "Assignment" were void
documents that did not have any legal force or effect.

51.     At all times relevant herein, GMAC held itself out to be acting on behalf of
Deutsche Bank, the purported principal beneficiary of Mrs. Figueroa's Loan.

52.     GMAC, Deutsche Bank, and ETS Services owe Plaintiff a statutory duty of
care (pursuant to C.C.C. §§ 2924, et seq. and 2934) and contractual duty of care
(pursuant to the terms of the Note and Deed of Trust).

53.     GMAC and Deutsche Bank breached their contractual and statutory duties
of care to Plaintiff when GMAC and Deutsche Bank failed to apply mortgage payments,
charged fees which they are not entitled to charge, wrongfully made or otherwise
authorized negative reporting of Plaintiff's creditworthiness to various credit bureaus.

54.     Additionally, as the purported agents of the current beneficiary, GMAC,
Deutsche Bank, and ETS Services had a statutory and contractual duty to ensure that the

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1 │ laws prescribed in C.C.C. §§ 2924, et seq. and 2934 were *strictly* followed to avoid the

2 │ Plaintiff's wrongful loss of the Subject Property.

3 │     55.   GMAC, Deutsche Bank, and ETS Services had a contractual and statutory

4 │ duty to exercise reasonable care and skill to follow California law with regard to

5 │ foreclosures, and refrain from taking any action against Plaintiff that they did not have

6 │ the right to take.

7 │     56.   By recording the Assignment, NOD, and NOTS documents to illegally lay

8 │ the legal and factual foundation for wrongful foreclosure proceedings, GMAC, Deutsche

9 │ Bank, and ETS Services breached their statutory and contractual duty of care to

10 │ Plaintiff.  The statutory duties are prescribed by Cal. Civ. Code §§ 2924, et seq. and

11 │ 2934 and the contractual duties arise from the Deed of Trust.

12 │     57.   In recording the Assignment, NOD and NOTS, in failing to follow Cal.

13 │ Civ. Code §§ 2924, et seq. and 2934, and in failing to take the actions as alleged above,

14 │ GMAC, Deutsche Bank, and ETS Services breached their contractual and statutory

15 │ duties of care and skill to Plaintiff by failing to follow California law with regard to

16 │ foreclosures, pursuant to Cal. Civ. Code § 2924, et seq. and 2934, and taking actions

17 │ against Plaintiff that they did not have the right to take.

18 │     58.   Deutsche Bank and GMAC as purported pecuniary beneficiary and

19 │ mortgage servicer of Mrs. Figueroa's Loan, have an independent duty to Plaintiff to

20 │ exercise reasonable care and skill to follow California law with regard to enforcement of

21 │ monetary obligations, and to refrain from taking or failing to take any action against

22 │ Plaintiff that they did not have the legal authority to do.[3]  This duty includes: (1) not

23 │ levying illegal fees, costs, or property inspection fees; (2) not collecting or demanding

24 │ mortgage payments when Defendants do not have the right to enforce the obligation; (3)

25 │

26 │ [3] Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed. Savings &* *Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991).  However, a bank may be liable in negligence if it

27 │ fails to discharge its contractual duties with reasonable care. *Das v. Bank of Am.*, 186 Cal. App. 4th 727, 741 (2010).  Additionally, a bank may be liable for aiding and abetting in tort when it renders

28 │ "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided in the commission of the tort. *Id.* citing *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144-45).

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1   not causing Plaintiff to overpay in principal or interest because of improper accounting;

2   (4) not improperly making derogatory credit reports to credit bureaus; (5) not failing to

3   provide an accurate accounting to Plaintiff when she requests one; and (6) not

4   negotiating with Plaintiff without obtaining legal or corporate authority.  Specifically,

5   Plaintiff alleges that the mortgage payments that she made from April 2007 to ˜

6   November 2010 were not properly applied to her Loan balance.

7         59.    As a direct and proximate result of the reckless negligence, utter

8   carelessness, and blatant fraud of the Defendants as set forth above, Plaintiff is unable to

9   determine her principal balance that does not include any presently unknown and illegal

10   fees, charges, and costs, and has suffered other monetary damages in an amount to be

11   determined at trial.  Plaintiff is now at risk of losing her home.

12         60.    GMAC further breached its statutory duty to respond to Plaintiff's

13   Qualified Written Request under RESPA within the statutorily prescribed time-period.

14   Specifically, GMAC failed to provide Plaintiff with an accounting of any and all escrow

15   advances made on her behalf, and an itemization of any late fees/charges, legal fees,

16   property inspection fees, property preservation fees, broker price opinion fees, statutory

17   expense fees, miscellaneous fees, corporate advance fees, trustee suspense accounts, and

18   any other illegal fees or charges she may have been illegally subjected to.

19         61.    RESPA also prohibits GMAC from providing certain credit information

20   during the 60-day period within which it had to respond to Plaintiff's QWR.  12 U.S.C.

21   § 2605(e)(3).  On information and belief, GMAC breached its duty to Plaintiff under

22   RESPA by providing the prohibited information to credit reporting agencies from about

23   October 18, 2011 onwards.

24         62.    As a direct and proximate result of the negligence and carelessness of the

25   Defendants as set forth above, Plaintiff suffered, and continues to suffer, general and

26   special damages in an amount to be determined at trial, including monetary damages,

27   attorneys' fees and costs of bringing suit to dispute, validate, Defendants' charges and

28

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1   fees against her Loan account, and purported rights to enforce their debt obligation

2   against her.

3       63.    Plaintiff also suffered damages in spending months attempting to negotiate

4   a loan modification with GMAC when GMAC did not pass through Plaintiff's

5   communications to Plaintiff's actual lender.  GMAC did not, at any point, obtain

6   approval or corporate authority to negotiate, approve, or deny Plaintiff for a loan

7   modification or other workout plan.

8       64.    Plaintiff alleges that GMAC, by accepting Plaintiff's payments and not

9   applying the payments to the Loan balance, violated Uniform Covenant 2 of Plaintiff's

10  Deed of Trust and TILA, both of which require lenders to apply payment on the day it is

11  received.  Uniform Covenant 2 of Plaintiff's Deed of Trust states that payments

12  accepted and applied by Lender shall be applied **in the following order of priority**: (a)

13  interest due under the Note; (b) principal due under the Note; (c) amounts due under

14  Section 3 [escrow items].  *See* Deed of Trust.  GMAC and Deutsche Bank breached

15  their duty of care by accepting Plaintiff's payments and keeping these payments in

16  "suspense".  By doing so, Defendants injured Plaintiff by misapplying her payments and

17  Plaintiff was injured because interest accrued on the wrong principal balance.

18  ## SECOND CAUSE OF ACTION-VIOLATION OF 15 U.S.C. § 1641(g)

19  ### [Against Deutsche Bank and Doe Defendants]

20      65.    Plaintiff hereby incorporates by reference each and every one of the

21  preceding paragraphs as if the same were fully set forth herein.

22      66.    Plaintiff resides in the Subject Property and it is her principal residence.

23      67.    The new subsection (g) added to Section 131 of TILA by Section 404 of

24  **The Helping Families Save Their Homes Act of 2009** states:

25  (g) NOTICE OF NEW CREDITOR-

26      (1)    IN GENERAL. –In addition to other disclosures required by this
        title, not later than 30 days after the date on which a mortgage loan is
27      sold or otherwise transferred or assigned to a third party, the creditor
        that is the new owner or assignee of the debt shall notify the
28      borrower in writing of such transfer, including-

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

(A) the identity, address, telephone number of the new creditor;
(B) the date of transfer;
(C) how to reach an agent or party having authority to act on behalf of the new creditor;
(D) the location of the place where transfer of ownership of the debt is recorded; and
(E) any other relevant information regarding the new creditor."

Failure to comply with the requirements of this new subsection 131(g) of TILA may result in civil liability for actual damages, legal fees and statutory damages under Section 130(a) of TILA.

68.     Plaintiff alleges that *if* Deutsche Bank acquired ownership of Plaintiff's Note, which Plaintiff explicitly disputes, it was after April 9, 2012, when the purported "Assignment" was recorded.

69.     Plaintiff alleges that Section 131(g) of TILA applies to Deutsche Bank as purported and alleged assignee of Plaintiff's loan.

70.     Section 131(g) of TILA requires Deutsche Bank to perform and comply with the requirements of the statute, otherwise face statutory and civil penalties and damages.

71.     Deutsche Bank purports to be a **creditor** under the alleged "Assignment of Deed of Trust" and is alleged to have violated 15 U.S.C. § 1641(g).

72.     The trustee *under the Deed of Trust* is ETS Services, *not* Deutsche Bank.

73.     Here, Deutsche Bank is acting as the purported *Trustee for a securitized trust pool*, the RALI Trust.   As such, Deutsche Bank claims to be the actual secured creditor, *not* the foreclosing trustee under the Deed of Trust.

74.     While confusing, this is different than the "trustee" under the Deed of Trust, the entity entitled to exercise the power of sale provision in the Deed of Trust.

75.     The fact that Deutsche Bank is being sued as "Deutsche Bank as Trustee" is of no consequence in relation to its alleged role as the new creditor seeking to collect payment from Plaintiff.

76.     Defendant Deutsche Bank alleges in publicly recorded documents that it is the purported new creditor and owner of Plaintiff's Note.

WEINTRAUB & SELTH, APC
11766 Wilshire Blvd., Suite 1170
Los Angeles, Ca 90025

-17-

77.    Deutsche Bank has not provided Plaintiff with written notice within 30 days after the date on which it was allegedly assigned the loan.

78.    Mrs. Figueroa received no Notice, which indicates the exact date of the purported assignment of the interest in her Note, as required by § 131(g)(1)(B).

79.    Mrs. Figueroa received no Notice, which indicates how to reach an agent or party having authority to act on Deutsche Bank behalf, as required by § 131(g)(1)(C).

80.    Mrs. Figueroa received no Notice, which indicates the location of the place where transfer of ownership of the debt is recorded, as required by § 131(g)(1)(D).

81.    Mrs. Figueroa received no Notice, which indicates any other relevant information regarding the new creditor, purportedly Deutsche Bank as required by § 131(g)(1)(E).

82.    Thus, Deutsche Bank violated 15 U.S.C. § 1641 and is subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages. *See* 15 U.S.C. § 1640.  The actual pecuniary damages include, but are not limited to, the over-calculation and overpayment of interest on Plaintiff's loan, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, costs associated with removing the cloud on her property title, and attorneys' fees and costs, in an amount to be proven at trial.

83.    The name of the TILA act, "The Helping Families Save Their Home Act of 2009", should put this issue into context since the statute was expressly created to avoid the secretive and purported "assignment" that took place here.  The congressional intent of the Act is clear – it was enacted to assist borrowers identify who their purported lender is so that they could contact them if they needed assistance saving their home.

84.    Plaintiff is entitled to a private right of action to enforce 15 U.S.C. §1641, et seq.

## THIRD CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 2605
### [Against GMAC and Doe Defendants]

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

85.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

86.     Plaintiff's Loan is a federally regulated mortgage loan and is subject to the federal Real Estate Settlement Procedures Act and its implementing regulation, Regulation X.

87.     On or about October 17, 2011, Plaintiff sent a QWR to GMAC via U.S. Mail. *See* **Exhibit "C"**.

88.     The QWR contained information to enable GMAC to identify Plaintiff's Loan and also contained specific requests related to the servicing of the Loan, specifically the a complete loan history, accumulated late fees and charges, and information to verify the validity and amount of the purported debt owed.  The QWR also contained a very specific statement of the reasons for Plaintiff's belief that the account was in error, including a request for all charges.  Plaintiff expected an itemization of any late fees/charges, legal fees, property inspection fees, property preservation fees, broker price opinion fees, statutory expense fees, miscellaneous fees, corporate advance fees, trustee suspense accounts, and any other illegal fees or charges she may have been illegally subjected to.

89.     Because the Loan is subject to RESPA, the Dodd-Frank Act, and Regulation X, all Defendants were required to comply with section 1463 of the Dodd-Frank Act.

90.     GMAC violated Section 6 of Regulation X upon receipt of Plaintiff's QWR by its acts and omissions including, but not limited to: (1) failure to timely make appropriate corrections to Plaintiff's account, including the disclosure and crediting of any late charges or penalties, and transmitting to the borrower a written notification of the correction; (2) failure to cease reporting prohibited information to credit reporting agencies as defined in section 604 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a); (3) failure to identify the name, address, and phone number of the holder in due course of Plaintiff's Note; (4) failure to provide the requested itemization of any and all

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

-19-

1     advances, charge and fees; and (5) failure to provide a complete transaction history of

2     Plaintiff's Loan.

3        91.     GMAC violated 12 U.S.C. § 2605 on or around January 10, 2012 when

4     GMAC failed to respond to Plaintiff's July 15, 2011 QWR. For the reasons stated herein

5     and is subject to statutory damages, civil liability, penalties, attorneys' fees, and actual

6     damages. *See* 12 U.S.C. § 2605.

7        92.     To date, GMAC has not provided a response to Plaintiff's QWR.

8        93.     The actual pecuniary damages include, but are not limited to, the over

9     calculation and overpayment of interest on Plaintiff's Loan, the costs of repairing

10     Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, and

11     attorneys' fees and costs, in an amount to be proven at trial.

12        94.     As a direct and proximate result of the violations of RESPA, Dodd-Frank

13     Act, and Regulation X by GMAC, Plaintiff has suffered actual pecuniary damages,

14     including but not limited to statutory damages, civil liability, and attorneys' fees, in an

15     amount to be proven at trial.

16

17                 **FOURTH CAUSE OF ACTION – VIOLATION OF**

18                 **BUS. & PROF. CODE § 17200, ET SEQ.**

19        **[Against Deutsche Bank, GMAC, ETS Services, and Doe Defendants]**

20        95.     Plaintiff hereby incorporates by reference each and every one of the

21     preceding paragraphs as if the same were fully set forth herein.

22        96.     Defendants have engaged in unfair, unlawful, and fraudulent business

23     practices in the State of California, as set forth above.

24        97.     By engaging in the above-described acts and practices, Defendants have

25     committed one of or more acts of unfair competition within the meaning of Bus. and

26     Prof. Code section 17200, et seq. Such acts include any unlawful, unfair or fraudulent

27     business act and conduct which is likely to deceive and is fraudulent in nature.

28     Specifically, Defendants' misrepresentation of the validity of the debt, the amount of

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1  "default" and debt, negotiating without legal authority to do so, and Defendant GMAC's

2  failure to respond to Plaintiff's QWR are unfair, unlawful and fraudulent business

3  practices.  Plaintiff also alleges that she was charged illegal late fees, illegal property

4  inspections, and improper foreclosure costs and fees in an amount to be determined.

5      98.   Deutsche's conduct, for the reasons stated herein, violated 15 U.S.C. §

6  1641(g), et seq. by not sending Plaintiff the required Notice of New Creditor.

7      99.   GMAC's conduct, for the reasons stated herein, violated 12 U.S.C. § 2605

8  by its acts and omissions including, but not limited to: (1) failure to make appropriate

9  corrections to Plaintiff's account, including the disclosure and crediting of any late

10 charges or penalties, and transmitting to the borrower a written notification of the

11 correction; (2) failure to cease reporting prohibited information to credit reporting

12 agencies as defined in section 604 of the Fair Credit Reporting Act, 15 U.S.C. §

13 1681(a); (3) failure to identify the name, address, and phone number of the holder in due

14 course of Plaintiff's Note; (4) failure to provide the requested itemization of any and all

15 advances, charge and fees; (5) provide a complete life loan history of Plaintiff's Loan;

16 and (6) failure to respond to Plaintiff's QWR on or by January 10, 2012.

17     100.  Deutsche Bank, GMAC, and ETS Services conduct, for the reasons stated

18 herein, violated Cal. Civ. Code Section 2924, et seq.

19     101.  Cal. Bus & Prof. Code Section 17200, et seq., prohibits acts of unfair

20 competition, which means and includes any unlawful, unfair or fraudulent business act

21 and conduct which is likely to deceive and is fraudulent in nature.  As more fully

22 described above, Defendants' acts and practices are unlawful, fraudulent, and likely to

23 deceive.  This conduct is ongoing and continues to this date.

24     102.  Defendants Deutsche Bank and GMAC demanded and accepted payments

25 and denied a loan modification without obtaining the requisite legal or corporate

26 authority to do so.

27     103.  Defendants Deutsche Bank and GMAC reported payments as late to credit

28 bureaus in violation of RESPA, and without the legal right or authority to do so.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

104.   Defendants Deutsche Bank and GMAC facilitated, aided, and abetted the illegal, deceptive, and unlawful enforcement of Plaintiff's Note and Mortgage and engaged in other illegal debt collection activities, including threatening to foreclose on Plaintiff's home based on a wrong "default" amount.

105.   As alleged herein, Plaintiff alleges that Deutsche Bank's purported agent(s) did not properly account for her payments and overcharged her in late fees, illegal costs, and excessive fees.

106.   Deutsche Bank and GMAC's conduct is part of a fraudulent debt collection scheme.

107.   The conduct described above by Deutsche Bank and GMAC was malicious because Defendants knew that they were not applying Plaintiff's mortgage payments, yet still demanded payment in an inaccurate amount.  However, despite such knowledge, Defendants continued to demand Plaintiff's mortgage payments for a Loan that has not been properly accounted for and are threatening to foreclose on Plaintiff's home.

108.   On information and belief, at all times material, Deutsche Bank and GMAC had, and have, actual knowledge that Plaintiff's account was not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate account.  Plaintiff made payments based on these improper, inaccurate, and fraudulent representations.

109.   As more fully described above, Defendants Deutsche Bank's and GMAC's acts and practices are unlawful.  This conduct is ongoing and continues to this date.

110.   As more fully described above, Defendants Deutsche Bank, GMAC, and ETS Services' acts and practices are likely to deceive members of the public.  This conduct is ongoing and continues to this date.

111.   As more fully described above, Defendants Deutsche Bank, GMAC, and ETS Services' acts and practices are unfair and the harm caused by their conduct

1  outweighs any benefit that their conduct may have. This conduct is ongoing and

2  continues to this date.

3      112.  Plaintiff alleges that by engaging in the above described acts and/or

4  practices as alleged herein, Defendants violated several laws including Cal. Bus. and

5  Prof. Code section 17200, et seq. and must be required to disgorge all profits related to

6  their unfair, unlawful, and deceptive business practices.

7      113.  Plaintiff alleges that Defendants Deutsche Bank's and GMAC's misconduct,

8  as alleged herein, gave them an unfair competitive advantage over their competitors.

9  The scheme implemented by Defendants Deutsche Bank and/or GMAC is designed to

10  defraud California consumers, including Plaintiff, and enrich the Deutsche Bank and/or

11  GMAC.

12      114.  The foregoing acts and practices have caused substantial harm to California

13  consumers, including Plaintiff.

14      115.  By reason of the foregoing, Deutsche Bank, GMAC, and ETS Services

15  have been unjustly enriched, by collecting payments that they are not entitled to, and

16  should be required to make restitution to Plaintiff and other California consumers who

17  have been harmed, and/or be enjoined from foreclosing on Plaintiff's home and

18  continuing in such practices pursuant to Cal. Bus. and Prof. Code sections 17203 and

19  17204.

20      116.  As a direct and proximate result of the violations of Cal. Bus. and Prof.

21  Code section 17200 by Deutsche Bank, GMAC, and ETS Services, Plaintiff has suffered

22  actual pecuniary damages, including, but not limited to civil liability, restitution,

23  injunctive relief preventing Deutsche Bank and/or GMAC from continuing to collect

24  mortgage payments, and attorneys' fees, in an amount to be proven at trial.

25      117.  As a result of Deutsche Bank, GMAC, and ETS Services' violations of Cal.

26  Bus. and Prof. Code section 17200, Plaintiff has been damaged in the following ways:

27  (1) Plaintiff has overpaid in interest that was over-calculated based on illegal fees,

28  charges, and advances incurred during the entire life of the Loan; (2) Mrs. Figueroa has

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1   expended significant funds to cover the cost of attorneys' fees and related costs; and (3)

2   Plaintiff is on the verge of losing her home.

3         118.   Plaintiff alleges that Defendants' misconduct, as alleged herein, gave, and

4   has given Defendants an unfair competitive advantage over their competitors.  The

5   scheme implemented by Defendants is designed to defraud California consumers and

6   enrich the Defendants.

7         119.   By reason of the foregoing, Defendants have been unjustly enriched, by

8   collecting payments that they are not entitled to, and should be required to disgorge their

9   illicit profits and/or make restitution to Plaintiff and other California consumers who

10  have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal.

11  Bus. & Prof. Code Sections 17203 and 17204.  Additionally, Plaintiff is therefore

12  entitled to injunctive relief available under Cal. Bus & Prof. Code § 17200 and related

13  sections.

14        120.   As a direct and proximate result of the violations of Cal. Bus. and Prof.

15  Code section 17200 by Deutsche Bank, GMAC, and ETS Services, Plaintiff has suffered

16  actual pecuniary damages, including, but not limited to civil liability, restitution, and

17  injunctive relief preventing Deutsche Bank, GMAC, and ETS Services from foreclosing

18  or continuing to collect mortgage payments in excess of what is actually owed by

19  Plaintiff.

20        **FIFTH CAUSE OF ACTION – BREACH OF CONTRACT**

21        **[Against Deutsche Bank, GMAC, and Doe Defendants]**

22        121.   Plaintiff hereby incorporates by reference each and every one of the

23  preceding paragraphs as if the same were fully set forth herein.

24        122.   In the alternative, if the finder of fact determines that Deutsche Bank is a

25  successor in interest to the Deed of Trust pursuant to the terms of the Deed of Trust,

26  Plaintiff allege that Defendants Deutsche Bank and/or GMAC breached the Deed of

27  Trust by improperly crediting and debiting her account.

28

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

123.   On or around March 2007, Plaintiff obtained the subject Loan from American Mortgage Network and executed a Note and Deed of Trust.

124.   The Deed of Trust sets forth the dates that the monthly principal and interest payments were due and when late fees and other charges could be assessed.

125.   Section 2 of the Deed of Trust states that: "Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due."  *See*, **Exhibit "B"**.

126.   At all times, Plaintiff performed all of the conditions in the Note and Deed of Trust.  To the extent that Defendants allege that Plaintiff did not perform all her conditions, her performance was excused due to the fact that Defendants Deutsche Bank and GMAC breached the terms of the Deed of Trust when they failed to apply or misapplied Plaintiff's payments since the inception of Plaintiff's Loan, charged illegal fees and costs, and induced Plaintiff to make payments that were not properly applied to her principal balance.[4]

127.   Deutsche Bank and/or GMAC breached the Deed of Trust by failing to properly apply and/or transmit the payments made by Plaintiff from March 2007 onwards, in the order of priority set forth in Section 2, and this resulted in improper fees,

---

[4] When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract.  (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 813, 814, p. 906 (Witkin) ["*Material* failure of consideration discharges the other party's duty"]; *De Burgh v. De Burgh* (1952) 39 Cal.2d 858, 863 ["in contract law a material breach excused further performance by [an] innocent party"]; see *Sanchez v. County of San Bernardino* (2009) 176 Cal.App.4th 516, 529-530; *Wyler v. Feuer* (1978) 85 Cal.App.3d 392, 404; see also *Walker v. Harbor Business Blocks Co.* (1919) 181 Cal. 773, 778 ["'failure . . . to perform an obligation . . . releases the obligee from the duty of making demand, and performance or tender, and justifies him in abandoning the contract'"]; 15 Williston on Contracts (4th ed. 2000) § 44:46, pp. 200-201 (Williston) [when there are a number of performances for each party to the contract, a breach by a party of one, if material, allows the other party to treat the contract as discharged]; see also Civ. Code, § 1439 ["Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself; and must be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party . . ."].)

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

charges, and costs being added to the balance of the Loan.  Specifically, Plaintiff believes that Defendants Deutsche Bank and GMAC did not properly, if at all, apply her mortgage payments to her Loan principal because she made payments from August 2008 to November 2010 but yet her Loan balance inexplicably increased from $758,000.00 to $818,000.00.

128.    Defendants have also breached the Note and First Deed of Trust by purporting to accelerate the entire debt due under the Note, and by initiating foreclosure proceedings, based on alleged nonperformance that defendants Deutsche Bank and GMAC negligently contributed to.  Defendants GMAC and Deutsche Bank have falsely asserted the existence of an unexcused and/or inaccurate default in payment of the Note; this knowingly false assertion by defendants, coupled with their attempt to obtain the benefit of nonjudicial remedies based upon this false assertion, is a further breach of contract by Defendants GMAC and Deutsche Bank.

129.    Plaintiff was unaware that Defendants were failing to apply the payments in the way set forth in the Deed of Trust because Defendants fraudulently concealed this practice of applying Plaintiff's mortgage payments to Plaintiff's account.  Plaintiff could not have reasonably discovered the impropriety of Defendants behavior because these facts were hidden from her and were not disclosed throughout the servicing of her Loan.

130.    Plaintiff alleges that GMAC, as an agent of Deutsche Bank, engaged in unfair and deceptive practices designed to collect additional charges, fees, and costs from Plaintiff.  These predatory servicing practices include:

a.  failing to timely apply or misapplying payments made by Plaintiff since the inception of the Loan, resulting in unjustified fees and "pyramiding" schemes where Plaintiff was charged a late fee every month as a result of one missed or misapplied payment;

b.  mishandling escrow accounts, resulting in additional fees being charged to their accounts; and,

1   c. failing to adequately staff its payment processing, customer service

2    departments, and back-end support departments making it impossible for

3    GMAC to adequately service loans or to respond to borrowers inquiries and

4    complaints.

5  131. Plaintiff could not have reasonably known of the existence of a breach of

6 the Deed of Trust because GMAC and Deutsche Bank fraudulently concealed, and

7 continue to conceal the improperly applied mortgage payments, the incorrect calculation

8 of interest, and the improper fees added to Plaintiff's account that did not comply with

9 Section 2 of Plaintiff's Deed of Trust.

10  132. As a proximate result of GMAC and Deutsche Bank breaches, Plaintiff has

11 suffered compensatory damages in an amount to be proven at trial.

12

13     **SIXTH CAUSE OF ACTION - ACCOUNTING**

14   **[Against Deutsche Bank, GMAC, ETS Services, and Doe Defendants]**

15  133. Plaintiff hereby incorporates by reference each and every one of the

16 preceding paragraphs as if the same were fully set forth herein.

17  134. Deutsche Bank with ETS Services and GMAC, as its purported agents,

18 have held themselves out to be Plaintiff's creditor, mortgage servicer, and foreclosure

19 trustee. As a result of this purported relationship with Plaintiff, said Defendants have a

20 fiduciary duty to Plaintiff to properly account for Plaintiff's monies paid to them.

21  135. As a result of the aforementioned fraudulent conduct, Plaintiff paid

22 Deutsche Bank and GMAC her mortgage payments. However, for the reasons stated

23 herein, none of this money was properly applied or accounted for by Deutsche Bank and

24 GMAC. Further, the sums paid to Deutsche Bank and/or GMAC may have been

25 calculated with the wrong interest rate. For that reason, these monies are due to be

26 returned to Plaintiff in full.

27  136. The amount of the money due from Defendants to Plaintiff is unknown to

28 Plaintiff and cannot be ascertained without an accounting of the receipts and

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1   disbursements of the aforementioned transactions.  Plaintiff is informed and believes

2   and thereon alleges that the amount due to her exceeds $75,000.00.

3        WHEREFORE, Plaintiff prays as follows:

4        1.    For compensatory, special, and general damages in an amount according to

5   proof at trial, against all Defendants;

6        2.    For exemplary damages in the amount of $5,000,000.00;

7        3.    For an order compelling Defendants to remove any instruments which do or

8   could be construed as constituting a cloud upon Plaintiff's title to the Property, including

9   the purported Assignment of Deed of Trust, Notice of Default, and Notice of Trustee's

10  Sale;

11       4.    For an order compelling Defendants to disgorge all amounts wrongfully

12  taken by them from Plaintiff and returning the same to Plaintiff with interest thereon at

13  the statutory rate from the date the funds were first received from Plaintiff;

14       5.    For injunctive relief enjoining Defendants from taking action against

15  Plaintiff or Plaintiff's Property as the Court may deem necessary or proper;

16       6.    For costs of suit incurred herein;

17       7.    For reasonable attorneys' fees as allowed by statutes;

18       8.    For such other and further relief as the court may deem proper.

19

20  Dated:      August 8, 2012             WEINTRAUB & SELTH, APC

21

22                              By: _____

23                                  Daniel J. Weintraub
                                    James R. Selth
24                                  Elaine V. Nguyen
                                    Attorneys for Plaintiff,
25                                  ENIKO FIGUEROA

26

27

28

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

-28-
COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff ENIKO FIGUEROA hereby demands a trial by jury on all claims.

Dated:        August 8, 2012                    WEINTRAUB & SELTH, APC

By:

Daniel J. Weintraub
James R. Selth
Elaine V. Nguyen
Attorneys for Plaintiff,
ENIKO FIGUEROA

EXHIBIT "A"

ORDER NO. LA0642745

*Vo*

EXHIBIT "A"

PARCEL NO. 1:

LOT 381 OF TRACT NO. 49761, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON A SUBDIVISION MAP RECORDED IN BOOK 1232 PAGES 11 TO 25 INCLUSIVE OF MAPS, IN THE OFFICE OF THE LOS ANGELES COUNTY RECORDER.

EXCEPT 1 PERCENT OF ALL OIL, GAS AND HYDROCARBON SUBSTANCES AS CONVEYED TO BURNETT WOLFSON IN DEED RECORDED IN BOOK 25197 PAGE 434, OFFICIAL RECORDS.

ALSO EXCEPT THE FOLLOWING INTEREST IN ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AS GRANTED TO THE GRANTEES SHOWN BELOW IN DEEDS RECORDED AS SHOWN BELOW.

BURNETT WOLFSON, GRANTEE, 5/6 OF 1 PERCENT INTEREST, IN BOOK 33487 PAGE 359, HARRY ROSENBERG, GRANTEE, 5/6 OF 1 PERCENT INTEREST IN BOOK 33487 PAGE 386, JOSEPH F. FERGUSON, GRANTEE, 2 ½ PERCENT OF 100 PERCENT INTEREST IN BOOK 33487 PAGE 392, EMANUEL LOWENFELD, GRANTEE, 5/6 OF 1 PERCENT INTEREST, IN BOOK 33487 PAGE 396 ALL OFFICIAL RECORDS.

THE INTEREST CONVEYED WERE CORRECTED BY A DEED EXECUTED BY THE ABOVE GRANTEES AND RECORDED IN BOOK 38937 PAGE 58, OFFICIAL RECORDS.

ALSO EXCEPT FROM THAT PORTION OF SAID LAND LYING WITHIN THE LAND DESCRIBED IN DEED RECORDED NOVEMBER 1, 1941 AS INSTRUMENT NO. 896 IN BOOK 18921 PAGE 53, OFFICIAL RECORDS, 4 PERCENT OF ALL OIL, AND OTHER HYDROCARBON SUBSTANCES AS CONVEYED TO C. G. WILLIS IN THE ABOVE MENTIONED DEED.

PARCEL NO. 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS AND EGRESS, USE, MAINTENANCE, REPAIR, REPLACEMENT, DRAINAGE, ENCROACHMENT, SUPPORT AND FOR OTHER PURPOSES, AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR STEVENSON RANCH RECORDED ON SEPTEMBER 23, 1988 AS INSTRUMENT NO. 88-1536478, AS AMENDED BY THE FIRST AMENDMENT THERETO RECORDED ON AUGUST 2, 1989 AS INSTRUMENT NO. 89-1232461, THE SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR STEVENSON RANCH (BELCREST DELEGATE DISTRICT) RECORDED ON APRIL 26, 1999 AS INSTRUMENT NO. 99-0730124, ALL RECORDED IN THE OFFICIAL RECORDS OF LOS ANGELES COUNTY, CALIFORNIA, AND ALL HEREINAFTER COLLECTIVELY REFERRED TO AS THE "DECLARATIONS".

0
7

0
6
9
2
1
2
2

EXHIBIT "B"



This page is part of your document - DO NOT DISCARD





**20070692122** Pages: 019

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

03/26/07 AT 08:00AM

Fee:  67.00
Tax:  0.00
Other: 0.00
Total: 67.00

TitleCompany

# TITLE(S) :





L E A D    S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.      Number of AIN's Shown



**THIS FORM IS NOT TO BE DUPLICATED**

# Equity Title

Recording Requested By
EQUITY TITLE

Return To

WACHOVIA MORTGAGE CORPORATION NC·4723
ATTN: POST CLOSING
1100 CORPORATE CENTER DRIVE
RALEIGH, NC 27607

03/28/07

20070692122

Prepared By

DIANA GREENLEE

_CA06I12 245_  [Space Above This Line For Recording Data]

# DEED OF TRUST

MIN   1001310·2260418651·4
LOAN NO. 226·418651

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16

(A) "Security Instrument" means this document, which is dated     MARCH 20, 2007
together with all Riders to this document
(B) "Borrower" is

    ENIKO FIGUEROA, A MARRIED WOMAN

Borrower's address is   26824 KENDALL LANE, STEVENSON RANCH, CALIFORNIA 91381
                 Borrower is the trustor under this Security Instrument
(C) "Lender" is   AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION

Lender is a    CORPORATION
organized and existing under the laws of   THE STATE OF DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3005  1/01

-6A(CA) (0207) 01
Page 1 of 15
      VMP Mortgage Forms, Inc

199CA

3

Lender's address is   P. O. BOX 85463, SAN DIEGO, CA 92186

(D) "Trustee" is   FIRST AMERICAN TITLE INSURANCE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026  tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   MARCH 20, 2007
The Note states that Borrower owes Lender   SEVEN HUNDRED SIXTY EIGHT THOUSAND AND 00/100
Dollars
(U.S. $   768,000.00  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   APRIL 01, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

007 0690212

6A(CA) (0207).01                    Page 2 of 15              c/f                 Form 3005   1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose Borrower irrevocably grants and conveys to Trustee in trust, with power of sale, the following described property located in the

COUNTY of LOS ANGELES
[Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERE TO AND MADE APART HEREOF       SEE EXHIBIT A

Parcel ID Number    2826-104-015                   which currently has the address of
                    26824 KENDALL LANE                                          [Street]
                    STEVENSON RANCH         [City], California    91381      [Zip Code]
("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

07 0092122

-6A(CA) (0207) 01          Page 2 of 15          Form 3005  1/01

of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current  without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if  and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full  a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items "  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments  if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be

-6A(CA) (0707) 01                          Page 4 of 15                                    Form 3005  1/01

6

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6A(CA) (0007) 01          Page 5 of 18          Form 3005   1/01

lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency  in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore  such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property  or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage  not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds  Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters  or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

07  0692122

6A(CA) (0207) 01                                          Page 6 of 15                                    Form 3005  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable

BA(CA) (0207).01      Page 7 of 15                Form 3005   1/01

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of this lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

07 0962122

-6A(CA) (0207).01                    Page 8 of 15                    Form 3005   1/01

(h) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6A(CA) (0207).01                                    Page 9 of 15                              Form 3006   1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

8A(CA) (0207) 01     Page 10 of 15     Form 3005   1/01

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument. (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower. (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

07  0892122

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

⊙
↗
⊙
⊙
⊙
ℕ
ↄ
ℕ
ℕ

VMP ® 8A(CA) (0207).01                          Page 13 of 15                          Form 3005   1/01

/5

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____ (Seal)
ENIKO FIGUEROA                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)         _____ (Seal)
                 -Borrower       -Borrower

_____ (Seal)         _____ (Seal)
                 -Borrower       -Borrower

_____ (Seal)         _____ (Seal)
                 -Borrower       -Borrower

 -6A(CA) (0207).01          Page 14 of 10          Form 3005   1/01

16

State of California
County of LOS ANGELES                    } ss.

On MARCH 22, 2007        before me SHANNON GARCIA, NOTARY Public
                                                    personally appeared

ENIKO FIGUEROA

_____ , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

Shannon Garcia  (Seal)

SHANNON GARCIA
Commission # 1421351
Notary Public - California
Los Angeles County
My Comm. Expires May 31, 2007

07
0692122

-6A(CA) (0207) 01              Page 15 of 15                    Form 3005  1/01

17

LOAN NO. 226 419651
MIN:  1001310-2260419651-4

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    20TH          day of
MARCH, 2007                       , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to
AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at
26824 KENDALL LANE
STEVENSON RANCH, CALIFORNIA 91381
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS

(the "Declaration") The Property is a part of a planned unit development known as
STEVENSON RANCH

[Name of Planned Unit Development]
(the "PUD") The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest

PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows

A PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents The "Constituent Documents" are the (i) Declaration, (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association, and (iii) any by-laws or other rules or regulations of the Owners Association
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01
Wolters Kluwer Financial Services          Page 1 of 3
VMP®-7R (0411) 01

419ST

*18*

B  Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then  (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property, and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy

What Lender requires as a condition of this waiver can change during the term of the loan

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender  Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

C  Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender

D  Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender  Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11

E  Lender's Prior Consent  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to  (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain, (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

F  Remedies  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment

VMP®-7R (0411) 01                        Page 2 of 3                        Form 3150 1/01

LOAN NO. 226-418651

19

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
          -Borrower

ENIKO FIGUEROA _____ (Seal)
                            -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

VMP®-7R (0411).01          Page 3 of 3          Form 3150 1/01

07

06921 22

ORDER NO.: LA0642745

*10*

EXHIBIT "A"

PARCEL NO. 1:

LOT 381 OF TRACT NO. 49761, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON A SUBDIVISION MAP RECORDED IN BOOK 1232 PAGES 11 TO 25 INCLUSIVE OF MAPS, IN THE OFFICE OF THE LOS ANGELES COUNTY RECORDER.

EXCEPT 1 PERCENT OF ALL OIL, GAS AND HYDROCARBON SUBSTANCES AS CONVEYED TO BURNETT WOLFSON IN DEED RECORDED IN BOOK 25197 PAGE 434, OFFICIAL RECORDS.

ALSO EXCEPT THE FOLLOWING INTEREST IN ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AS GRANTED TO THE GRANTEES SHOWN BELOW IN DEEDS RECORDED AS SHOWN BELOW.

BURNETT WOLFSON, GRANTEE, 5/6 OF 1 PERCENT INTEREST, IN BOOK 33487 PAGE 359, HARRY ROSENBERG, GRANTEE, 5/6 OF 1 PERCENT INTEREST IN BOOK 33487 PAGE 386, JOSEPH F. FERGUSON, GRANTEE, 2 ½ PERCENT OF 100 PERCENT INTEREST IN BOOK 33487 PAGE 392, EMANUEL LOWENFELD, GRANTEE, 5/6 OF 1 PERCENT INTEREST, IN BOOK 33487 PAGE 396 ALL OFFICIAL RECORDS.

THE INTEREST CONVEYED WERE CORRECTED BY A DEED EXECUTED BY THE ABOVE GRANTEES AND RECORDED IN BOOK 38937 PAGE 58, OFFICIAL RECORDS.

ALSO EXCEPT FROM THAT PORTION OF SAID LAND LYING WITHIN THE LAND DESCRIBED IN DEED RECORDED NOVEMBER 1, 1941 AS INSTRUMENT NO. 896 IN BOOK 18921 PAGE 53, OFFICIAL RECORDS, 4 PERCENT OF ALL OIL, AND OTHER HYDROCARBON SUBSTANCES AS CONVEYED TO C. G. WILLIS IN THE ABOVE MENTIONED DEED.

PARCEL NO. 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS AND EGRESS, USE, MAINTENANCE, REPAIR, REPLACEMENT, DRAINAGE, ENCROACHMENT, SUPPORT AND FOR OTHER PURPOSES, AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR STEVENSON RANCH RECORDED ON SEPTEMBER 23, 1988 AS INSTRUMENT NO. 88-1536478, AS AMENDED BY THE FIRST AMENDMENT THERETO RECORDED ON AUGUST 2, 1989 AS INSTRUMENT NO. 89-1232461, THE SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR STEVENSON RANCH (BELCREST DELEGATE DISTRICT) RECORDED ON APRIL 26, 1999 AS INSTRUMENT NO. 99-0730124, ALL RECORDED IN THE OFFICIAL RECORDS OF LOS ANGELES COUNTY, CALIFORNIA, AND ALL HEREINAFTER COLLECTIVELY REFERRED TO AS THE "DECLARATIONS".

Q7 0692122

EXHIBIT "C"

# *Weintraub&Selth*

### A Professional Corporation
## ATTORNEYS AT LAW

---

11766 Wilshire Blvd., Suite 1170 ● Los Angeles, California 90025 ● 310 207-1494 ● fax: 310 442-0660 ● info@wsrlaw.net ● www.wsrlaw.net

File No.: 4203.01

October 17, 2011

*Sent via certified mail and facsimile:*

GMAC Mortgage, LLC

**Re:**   **Borrower(s): Eniko Figueroa**
**Property Address: 26824 Kendall Avenue, Stevenson Ranch, CA 91381**
**Loan Number: 226-418651**

Dear Sir or Madam:

Please be advised that our office has been retained by Eniko Figueroa to represent her in regard to Ms. Figueroa's real property and loan as set forth above. This is a qualified written request ("QWR") pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e). Specifically, my client has concerns over the identity of the true owner of the above referenced loan, GMAC's inconsistent accounting and billing, and GMAC's application of Ms. Figueroa's payments.

Ms. Figueroa's loan was originally with American Mortgage Network, Inc. Approximately a few months after Ms. Figueroa purchased her residence, she was directed to forward all payments to GMAC. Ms. Figueroa unquestioningly complied with this request and submitted payments to GMAC. On or about August 2008, GMAC adjusted Ms. Figueroa's loan pursuant to a loan modification. The GMAC loan modification, which was supposed to help Ms. Figueroa, somehow increased her original principal balance from $758,000.00 to $818,000.00. Ms. Figueroa was not provided with an accounting or explanation of how her principal balance increased. Moreover, Ms. Figueroa was not provided with an explanation of how her principal balance increased by such a large amount when she had faithfully made payments to GMAC for over a year. Ms. Figueroa believes that during this period her regular monthly payments to GMAC and her trial payments pursuant to the loan modification were not credited properly.

On or about November 2010, Ms. Figueroa contacted GMAC to inquire about her loan and loan modification.

*Weintraub&Selth*

GMAC Mortgage, LLC
October 17, 2011
Page 2

GMAC requested that Ms. Figueroa submit a further loan modification application.  For over a year, Ms. Figueroa submitted and resubmitted her loan modification papers to GMAC.  On several occasions, Ms. Figueroa was informed that her sensitive documents were lost, misplaced, or sent to the "wrong" division.  Now Ms. Figueroa has learned that GMAC may not even have the authority to negotiate a loan modification.  Frustrated, Ms. Figueroa has now retained counsel.  Ms. Figueroa disputes the amounts owed, fees and charges and hereby requests that GMAC send the following information:

1.  A complete life of the loan transaction history;

2.  A payoff statement with an explanation of any and all charges and fees;

3.  The reinstatement amount with an explanation of any and all charges and fees;

4.  A complete payment history, including an explanation of how payments were applied and, the recipient of any and all of Ms. Figueroa's payments;

5.  A breakdown of the amount of claimed arrears or delinquencies, including an itemization of all fees charged to the account;

6.  A breakdown of current escrow charges, and the recipient of all escrow items charged to Ms. Figueroa's account;

7.  If Ms. Figueroa's account is registered with MERS, the MERS MIN number;

8.  The identity of the current owner of Ms. Figueroa's loan along with a mailing address and other contact information;

9.  The date that the current holder acquired Ms. Figueroa's loan and from whom it was acquired from;

10.  A copy of Ms. Figueroa's promissory note along with any allonges, recorded and unrecorded assignments, and documents relating to her loan;

11.  If Ms. Figueroa's loan was securitized into a mortgage pool, the identity of the mortgage trust pool, the identity and contact information of the custodian of the trust, the Pooling and Servicing Agreement, the attached mortgage and loan schedule, and the Mortgage Loan Sales and Purchasing Agreement;

*Weintraub & Selth*

GMAC Mortgage, LLC
October 17, 2011
Page 3

12.     A copy of all servicing agreements relating to Ms. Figueroa's loan, including, but not limited to, master servicing agreements, sub-servicing, contingency, speciality, and back-up agreements;

Further, please be advised that if Ms. Figueroa's loan was transferred  Section 131(g) of the Truth in Lending Act ("TILA") [15 U.S.C. 1641(g)] **requires** the following disclosures within thirty (30) days of the transfer:

1.     The identity, address, and telephone number of the new creditor (including the name of the trust; the date of transfer;

2.     How to reach an agent or party having authority to act on behalf of the new creditor;

3.      The location of the place where transfer of ownership of the debt is recorded; and;

4.     Any other relevant information regarding the new creditor.

Failure to comply with the requirements of this new subsection 131(g) of TILA may result in civil liability for actual damages, legal fees and statutory damages under Section 130(a) of TILA.

Pursuant to 12 U.S.C. §2605(e) you are hereby notified that placing any negative coding on my client's credit report before responding to this letter is a violation of RESPA and the FCRA.  My client will pursue civil liability if negative coding appears for this account before a response to this QWR is provided.

This is a good faith attempt to resolve the foregoing issues.  Failure to provide the requested information will result in my client pursuing you for damages and enforcing her rights under the law.  Your anticipated prompt attention to this request is appreciated.

Sincerely,

WEINTRAUB & SELTH , APC

ELAINE V. NGUYEN

cc: Rafael and Eniko Figueroa

EXHIBIT "D"


**NORTH**
**AMERICAN**
**TITLE**
**COMPANY**



| | | | Parcel/Tax ID |
|---|---|---|---|
| Owner | Address | | 2826-104-015 |
| FIGUEROA,RAFAEL & ENIKO | 26824 KENDALL LN  STEVENSON RANCH , CA 91381 | | |

**Transaction History**

### Transaction 17 - Assignment

**Transaction Information**

| Buyer / Borrower | ENIKO FIGUEROA | | |
|---|---|---|---|
| Recorded Date | Apr 09, 2012 | | |
| Document Number | 531728 | | |
| Assigned Lender | DEUTSCHE BK TR CO 2007QS9 (CE) | | |

**Original Loan Information**

| Loan Amount | $768,000 | Loan Type | Conventional |
|---|---|---|---|
| Document # | 692122 | Interest Rate | Fixed |
| Recorded Date | Mar 26, 2007 | | |
| Lender Name | AMERICAN MORTGAGE NETWORK INC | | |

### Transaction 16 - Transfer

**Transaction Information**

| Buyer / Borrower | FIGUEROA,RAFAEL & ENIKO | | |
|---|---|---|---|
| Recorded Date | Mar 27, 2007 | Signature Date | Mar 22, 2007 |
| Title Company | EQUITY TITLE AGENCY | Multiple/Portion | |

**Ownership Transfer Information**

| Seller | FIGUEROA,ENIKO | | |
|---|---|---|---|
| Transfer Value | | Transaction Type | Resale |
| | | Deed In Lieu | N |
| Document # | 0000701248 | Deed Type | Quitclaim Deed Of Trust |

**Loan Information**

| Loan Amount | | Loan Type | Conventional |
|---|---|---|---|
| Document # | 0000701248 | Interest Rate Type | |
| | | Seller Carry Back | N |
| Lender Name | | | |

### Transaction 15 - Transfer

**Transaction Information**

| Buyer / Borrower | FIGUEROA,ENIKO | | |
|---|---|---|---|
| Recorded Date | Mar 26, 2007 | Signature Date | Dec 29, 2006 |
| Title Company | EQUITY TITLE AGENCY | Multiple/Portion | |

**Ownership Transfer Information**

| Seller | HAEMMERLE,LARRY & AVRIL | | |
|---|---|---|---|
| Transfer Value | $960,000  (Full) | Transaction Type | Resale |
| | | Deed In Lieu | N |
| Document # | 0000692121 | Deed Type | Grant Deed Or Deed Of Trust |

**Loan Information**

| Loan Amount | $768,000 | Loan Type | Conventional |
|---|---|---|---|
| Document # | 692122 | Interest Rate Type | Fixed |
| | | Seller Carry Back | N |
| Lender Name | AMERICAN MORTGAGE NETWORK INC | | |

**Loan Information**

| Loan Amount | $192,000 | Loan Type | Conventional |
|---|---|---|---|
| Document # | 692123 | Interest Rate Type | Fixed |
| | | Seller Carry Back | N |
| Lender Name | J P MORGAN CHASE BANK | | |

*Copyright © 1999-2011 DataQuick Information Systems, Inc. All Rights Reserved. This information is compiled from public documents and is not guaranteed.*

# NORTH AMERICAN TITLE COMPANY

Like Clockwork.

| | | |
|---|---|---|
| **Owner** | **Address** | **Parcel/Tax ID** |
| FIGUEROA,RAFAEL & ENIKO | 26824 KENDALL LN  STEVENSON RANCH , CA 91381 | 2826-104-015 |

## Transaction History

### Transaction 14 - Transfer

**Transaction Information**

| | | | |
|---|---|---|---|
| Buyer / Borrower | FIGUEROA,ENIKO | | |
| Recorded Date | Mar 26, 2007 | Signature Date | Mar 22, 2007 |
| Title Company | EQUITY TITLE AGENCY | Multiple/Portion | |

**Ownership Transfer Information**

| | | | |
|---|---|---|---|
| Seller | FIGUEROA,RAFAEL | | |
| Transfer Value | | Transaction Type | Resale |
| | | Deed In Lieu | N |
| Document # | 0000692120 | Deed Type | Quitclaim Deed Of Trust |

**Loan Information**

| | | | |
|---|---|---|---|
| Loan Amount | | Loan Type | Conventional |
| Document # | 0000692120 | Interest Rate Type | |
| | | Seller Carry Back | N |

Lender Name

### Transaction 13 - Transfer

**Transaction Information**

| | | | |
|---|---|---|---|
| Buyer / Borrower | HAEMMERLE,LARRY & AVRIL | | |
| Recorded Date | Apr 20, 2005 | Signature Date | |
| Title Company | FIRST SOUTHWESTERN TITLE | Multiple/Portion | |

**Ownership Transfer Information**

| | | | |
|---|---|---|---|
| Seller | FOSTER TRUST | | |
| Transfer Value | $950,000  (Full) | Transaction Type | Resale |
| | | Deed In Lieu | N |
| Document # | 0000913123 | Deed Type | Grant Deed Or Deed Of Trust |

**Loan Information**

| | | | |
|---|---|---|---|
| Loan Amount | $576,000 | Loan Type | Conventional |
| Document # | 913124 | Interest Rate Type | Adjustable Rate |
| | | Seller Carry Back | N |

Lender Name  J P MORGAN CHASE BANK

**Loan Information**

| | | | |
|---|---|---|---|
| Loan Amount | $127,000 | Loan Type | Conventional |
| Document # | 913125 | Interest Rate Type | Fixed |
| | | Seller Carry Back | N |

Lender Name  J P MORGAN CHASE BANK

### Transaction 12 - Transfer

**Transaction Information**

| | | | |
|---|---|---|---|
| Buyer / Borrower | FOSTER,TR | | |
| Recorded Date | Dec 10, 2003 | Signature Date | |
| Title Company | | Multiple/Portion | |

**Ownership Transfer Information**

| | | | |
|---|---|---|---|
| Seller | FOSTER,ERIC J & LAURIE A | | |
| Transfer Value | | Transaction Type | Resale |
| | | Deed In Lieu | N |
| Document # | 0003737550 | Deed Type | Quitclaim Deed Of Trust |

**Loan Information**

| | | | |
|---|---|---|---|
| Loan Amount | | Loan Type | Conventional |
| Document # | 0003737550 | Interest Rate Type | |
| | | Seller Carry Back | N |

Lender Name

Copyright © 1999-2011 DataQuick Information Systems, Inc. All Rights Reserved. This information is compiled from public documents and is not guaranteed.

# NORTH AMERICAN TITLE COMPANY

*Like Clockwork.*

| Owner | Address | Parcel/Tax ID |
|---|---|---|
| FIGUEROA,RAFAEL & ENIKO | 26824 KENDALL LN  STEVENSON RANCH , CA 91381 | 2826-104-015 |

## Transaction History

### Transaction 11 - Finance

**Transaction Information**

| Buyer / Borrower | FOSTER,ERIC & LAURIE | Signature Date | |
|---|---|---|---|
| Recorded Date | Oct 28, 2003 | Multiple/Portion | |
| Title Company | CHICAGO TITLE | | |

**Loan Information**

| Loan Amount | $151,000 | Loan Type | Conventional |
|---|---|---|---|
| Document # | 0003225237 | Interest Rate Type | Adjustable Rate |
| | | Seller Carry Back | N |
| Lender Name | F & A FCU | | |

### Transaction 10 - Finance

**Transaction Information**

| Buyer / Borrower | FOSTER,ERIC & LAURIE | Signature Date | |
|---|---|---|---|
| Recorded Date | Apr 18, 2003 | Multiple/Portion | |
| Title Company | FIDELITY NATIONAL TITLE | | |

**Loan Information**

| Loan Amount | $504,000 | Loan Type | Conventional |
|---|---|---|---|
| Document # | 0001105913 | Interest Rate Type | Fixed |
| | | Seller Carry Back | N |
| Lender Name | AMERICA'S WHOLESALE LENDER | | |

### Transaction 9 - Finance

**Transaction Information**

| Buyer / Borrower | FOSTER,ERIC & LAURIE | Signature Date | |
|---|---|---|---|
| Recorded Date | Oct 31, 2002 | Multiple/Portion | |
| Title Company | FIDELITY NATIONAL TITLE | | |

**Loan Information**

| Loan Amount | $504,500 | Loan Type | Conventional |
|---|---|---|---|
| Document # | 0002598055 | Interest Rate Type | Fixed |
| | | Seller Carry Back | N |
| Lender Name | AMERICA'S WHOLESALE LENDER | | |

### Transaction 8 - Finance

**Transaction Information**

| Buyer / Borrower | FOSTER,ERIC & LAURIE | Signature Date | |
|---|---|---|---|
| Recorded Date | Sep 03, 2002 | Multiple/Portion | |
| Title Company | FIDELITY NATIONAL TITLE | | |

**Loan Information**

| Loan Amount | $504,500 | Loan Type | Conventional |
|---|---|---|---|
| Document # | 0002057550 | Interest Rate Type | Fixed |
| | | Seller Carry Back | N |
| Lender Name | AMERICA'S WHOLESALE LENDER | | |

### Transaction 7 - Finance

**Transaction Information**

| Buyer / Borrower | FOSTER,ERIC & LAURIE | Signature Date | |
|---|---|---|---|
| Recorded Date | Dec 14, 2001 | Multiple/Portion | |
| Title Company | FIDELITY NATIONAL TITLE | | |

**Loan Information**

| Loan Amount | $50,000 | Loan Type | Conventional |
|---|---|---|---|
| Document # | 0002396353 | Interest Rate Type | Adjustable Rate |
| | | Seller Carry Back | N |
| Lender Name | INDYMAC BANK FSB | | |

Copyright © 1999-2011 DataQuick Information Systems, Inc. All Rights Reserved. This information is compiled from public documents and is not guaranteed.

# NORTH AMERICAN TITLE COMPANY

like Clockwork

| Owner | Address | Parcel/Tax ID |
|---|---|---|
| FIGUEROA,RAFAEL & ENIKO | 26824 KENDALL LN  STEVENSON RANCH , CA 91381 | 2826-104-015 |

## Transaction History

### Transaction 6 - Finance

**Transaction Information**

| | | | |
|---|---|---|---|
| Buyer / Borrower | FOSTER,ERIC & LAURIE | | |
| Recorded Date | Dec 14, 2001 | Signature Date | |
| Title Company | FIDELITY NATIONAL TITLE | Multiple/Portion | |

**Loan Information**

| | | | |
|---|---|---|---|
| Loan Amount | $458,000 | Loan Type | Conventional |
| Document # | 0002396352 | Interest Rate Type | Fixed |
| | | Seller Carry Back | N |
| Lender Name | INDYMAC BANK FSB | | |

### Transaction 5 - Finance

**Transaction Information**

| | | | |
|---|---|---|---|
| Buyer / Borrower | FOSTER,ERIC & LAURIE | | |
| Recorded Date | Jul 31, 2001 | Signature Date | |
| Title Company | LAWYERS TITLE | Multiple/Portion | |

**Loan Information**

| | | | |
|---|---|---|---|
| Loan Amount | $458,000 | Loan Type | Conventional |
| Document # | 0001359153 | Interest Rate Type | Fixed |
| | | Seller Carry Back | N |
| Lender Name | DOWNEY S & L (WHOLESALE) | | |

### Transaction 4 - Assignment

**Transaction Information**

| | | | |
|---|---|---|---|
| Buyer / Borrower | Eric & Laurie Foster | | |
| Recorded Date | Dec 05, 2000 | | |
| Document Number | 1889225 | | |
| Assigned Lender | BANK OF AMERICA | | |

**Original Loan Information**

| | | | |
|---|---|---|---|
| Loan Amount | $459,350 | Loan Type | Other |
| Document # | | Interest Rate | Adjustable Rate |
| Recorded Date | Jan 01, 1900 | | |
| Lender Name | HOMEAMERICAN MORTGAGE CORP | | |

### Transaction 3 - Finance

**Transaction Information**

| | | | |
|---|---|---|---|
| Buyer / Borrower | FOSTER,ERIC & LAURIE | | |
| Recorded Date | Nov 28, 2000 | Signature Date | |
| Title Company | LANDSAFE TITLE | Multiple/Portion | |

**Loan Information**

| | | | |
|---|---|---|---|
| Loan Amount | $50,000 | Loan Type | Conventional |
| Document # | 0001851528 | Interest Rate Type | Adjustable Rate |
| | | Seller Carry Back | N |
| Lender Name | COUNTRYWIDE HOME LOANS INC | | |

### Transaction 2 - Transfer

**Transaction Information**

| | | | |
|---|---|---|---|
| Buyer / Borrower | FOSTER,ERIC & LAURIE | | |
| Recorded Date | Sep 29, 2000 | Signature Date | |
| Title Company | FIDELITY NATIONAL TITLE | Multiple/Portion | |

**Ownership Transfer Information**

| | | | |
|---|---|---|---|
| Seller | RICHMOND AMERICAN HOMES CA | | |
| Transfer Value | $574,500  (Full) | Transaction Type | Subdivision |
| | | Deed In Lieu | N |
| Document # | 0001537605 | Deed Type | |

**Loan Information**

| | | | |
|---|---|---|---|
| Loan Amount | $459,350 | Loan Type | Conventional |
| Document # | 1537606 | Interest Rate Type | Adjustable Rate |
| | | Seller Carry Back | N |
| Lender Name | HOMEAMERICAN MORTGAGE CORP | | |

Copyright © 1999-2011 DataQuick Information Systems, Inc. All Rights Reserved. This information is compiled from public documents and is not guaranteed.

# NORTH AMERICAN TITLE COMPANY

*Like Clockwork.*

| Owner | Address | Parcel/Tax ID |
|---|---|---|
| FIGUEROA,RAFAEL & ENIKO | 26824 KENDALL LN  STEVENSON RANCH , CA 91381 | 2826-104-015 |

## Transaction History

## Transaction 1 – Transfer

### Transaction Information

| | | | |
|---|---|---|---|
| Buyer / Borrower | RICHMOND AMERICAN HOMES OF | | |
| Recorded Date | Nov 19, 1998 | Signature Date | |
| Title Company | | Multiple/Portion | |

### Ownership Transfer Information

| | | | |
|---|---|---|---|
| Seller | | | |
| Transfer Value | $14,264,000 | Transaction Type | Resale |
| | | Deed In Lieu | N |
| Document # | 2124131 | Deed Type | |

### Loan Information

| | | | |
|---|---|---|---|
| Loan Amount | | Loan Type | Conventional |
| Document # | 2124131 | Interest Rate Type | |
| | | Seller Carry Back | N |
| Lender Name | | | |

---

### Legend

⑤ Unusually large change in price          ㉛ Multiple sales within a 30 day period

*Copyright © 1999-2011 DataQuick Information Systems, Inc. All Rights Reserved. This information is compiled from public documents and is not guaranteed.*

EXHIBIT "E"

This page is part of your document - DO NOT DISCARD

## 20120598297





**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/23/12 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 21.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 21.00 |



LEADSHEET



201204230200013

00005693209



003940603

SEQ:
16

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED                t35



04/23/2012
*20120598297*

**RECORDING REQUESTED BY:**
LSI TITLE COMPANY, INC.

**WHEN RECORDED MAIL TO:**
Executive Trustee Services, LLC
dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
APN: 2826-104-015

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: CA1200050473     Loan No.: 0442652434

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until *approximately 90 days* from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $50,065.37 as of **Apr 20, 2012**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact,
**Deutsche Bank Trust Company Americas as Trustee for RALI 2007QS9.**
C/O Executive Trustee Services, LLC dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932 phone

TS NO.: CA1200050473          LOAN NO.: 0442652434

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **03/20/2007**, executed by **ENIKO FIGUEROA, A MARRIED WOMAN**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION, its successors and assigns**, as beneficiary, recorded **03/26/2007**, as Instrument No. **20070692122**, in Book XX , Page XX, of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$768,000.00**; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 6/1/2011 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5**

Dated: **Apr 20, 2012**

ETS Services, LLC as Agent for Beneficiary

BY:

Carlo Magno
TRUSTEE SALE OFFICER

EXHIBIT "F"

This page is part of your document - DO NOT DISCARD



## 20121100094



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/25/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201207250140010

00006167687



004160811

SEQ:
11

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

T35

*07/25/2012*
*20121100094*

RECORDING REQUESTED BY
Executive Trustee Services, LLC dba ETS Services, LLC

AND WHEN RECORDED MAIL TO'
Executive Trustee Services, LLC dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

T.S. No. CA1200050473
Loan No 0442652434
Insurer No.        120027912

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 03/20/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: ENIKO FIGUEROA, A MARRIED WOMAN
Recorded 03/28/2007 as Instrument No. 20070692122 in Book XX, page XX of Official Records in the office of the Recorder of Los Angeles County. California
Date of Sale: 08/20/2012 at 11:00 A.M.
Place of Sale:    By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766
Property Address is purported to be:    26824 KENDALL LANE
STEVENSON RANCH, CA 91381

APN #  2826-104-015

The total amount secured by said instrument as of the time of initial publication of this notice is $881,289.91, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs. expenses, and advances at the time of initial publication of this notice

3

T.S. No. **CA1200050473**
Loan No **0442652434**
Insurer No

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 or visit this Internet Web site address www.lpsasap.com for information regarding the sale of this property, using the file number assigned to this case file number CA1200050473. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date. 07/23/2012

**Executive Trustee Services, LLC dba ETS Services, LLC**
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
Sale Line: 714-730-2727

Omar Solorzano, TRUSTEE SALE OFFICER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV12- 6850 R (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 44J (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| ENIKO FIGUEROA | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| GMAC MORTGAGE USA CORPORATION ; DEUTSCHE | ) |
| BANK TRUST COMPANY AMERICAS , AS TRUSTEE FOR | ) |
| RALI 2007&59; EXECUTIVE TRUSTEE SERVICES D/B/A ETS | ) |
| SERVICES, LLC; AND DOES 1 – 10, INCLUSIVE , | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No. **CV12-06850** P-(SH)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

```
Executive Trustee Services, LLC
d/b/a ETS Services, LLC
2710 Gateway Oaks Dr., Ste. 150N
Sacramento, CA 95833
```

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Weintraub & Selth, APC
Elaine V. Nguyen - Bar #256432
11766 Wilshire Blvd., Suite 1170
Los Angeles, CA 90025
T: (310) 207-1494
F: (310) 442-0660

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: AUG - 9 2012

CLERK OF COURT

JULIE PRADO

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                      *Server's signature*

                               _____
                                      *Printed name and title*


                               _____
                                      *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| ENIKO FIGUEROA | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| | ) |
| GMAC MORTGAGE USA CORPORATION ; DEUTSCHE | ) |
| BANK TRUST COMPANY AMERICAS , AS TRUSTEE FOR | ) |
| RALI 2007&S9 ; EXECUTIVE TRUSTEE SERVICES D/B/A ETS | ) |
| SERVICES, LLC ; AND Does 1 - 10, Inclusive , | ) |
| _Defendant(s)_ | ) |

Civil Action No.   **CV12-06850** P (SH)

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

```
Deutsche Bank Trust Company Americas,
as Trustee for RALI2007QS9
1761 East Street, Andrew Place
Santa Ana, CA 92705
```

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Weintraub & Selth, APC
Elaine V. Nguyen - Bar #256432
11766 Wilshire Blvd., Suite 1170
Los Angeles, CA 90025
T: (310) 207-1494
F: (310) 442-0660

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

AUG - 9 2012

Date: _____

CLERK OF COURT

JULIE PRADO

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____            _____
                                            *Server's signature*

                                   _____
                                            *Printed name and title*


                                   _____
                                            *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| ENIKO FIGUEROA | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| | ) |
| GMAC MORTGAGE USA CORPORATION ; DEUTSCHE | ) |
| BANK TRUST COMPANY AMERICAS , AS TRUSTEE FOR | ) |
| RALI 2007G59; EXECUTIVE TRUSTEE SERVICES D/B/A ETS | ) |
| SERVICES, LLC; AND DOES 1-10, INCLUSIVE , | ) |
| _Defendant(s)_ | ) |

Civil Action No. **CV12-06850** P\S H×)

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

GMAC Mortgage USA Corporation
2710 Gateway Oaks Dr., Ste. 150N
Sacramento, CA 95833

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Weintraub & Selth, APC
Elaine V. Nguyen - Bar #256432
11766 Wilshire Blvd., Suite 1170
Los Angeles, CA 90025
T: (310) 207-1494
F: (310) 442-0660

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

JULIE PRADO

Date: AUG - 9 2012 _____       _____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ENIKO FIGUEROA

**DEFENDANTS**
GMAC MORTGAGE USA CORPORATION; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RALI 2007QS9; EXECUTIVE TRUSTEE SERVICES, LLC D/B/A ETS SERVICES, LLC

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Weintraub & Selth, APC; Elaine V. Nguyen - Bar #256432
11766 Wilshire Blvd., Suite 1170
Los Angeles, CA 90025; T: (310) 207-1494

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No        ☑ **MONEY DEMANDED IN COMPLAINT: $** 5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of 15 USC 1641(g) and 12 USC 2605

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | PERSONAL PROPERTY | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☑ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 442 Employment | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV12-06850

FOR OFFICE USE ONLY:   Case Number:

COURTESY COPY AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Los Angeles | County of New York; County of Montgomery |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):                          Date  August 8, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |